# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRACY A. CHARLIER, | ) |
|              Plaintiff, | ) |
| v. | ) C.A. No. 20-1327-CFC-JLH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|              Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Tracy A. Charlier appeals from an unfavorable decision of the Commissioner of the Social Security Administration[1] denying her application for disability insurance benefits ("DIB"). This Court has jurisdiction under 42 U.S.C. § 405(g).

The parties filed cross-motions for summary judgment. (D.I. 19; D.I. 24.) For the reasons announced from the bench on February 11, 2022, I recommend that the Court DENY Plaintiff's motion and GRANT the Commissioner's cross-motion, as I conclude that the Commissioner's decision is supported by substantial evidence and that there are no reversible errors.

### I.    LEGAL STANDARDS

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi was automatically substituted for former Commissioner of Social Security Andrew Saul when she succeeded him on July 9, 2021.

whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of

> all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II. DISCUSSION

My Report and Recommendation was announced from the bench on February 11, 2022, as follows:

> I'm ready to give you my reports and recommendations on the cross-motions for summary judgment in *Hight v. Kijakazi* and the cross-motions for summary judgment in *Charlier v. Kijakazi*.
>
> I will summarize the reasons for my recommendations in a moment. But before I do, I want to be clear that my failure to address a particular argument advanced by a party does not mean that I did not consider it. We have carefully considered the pertinent portions of the administrative record and the parties' briefs in both cases. I am not going to read my understanding of the applicable law into the record today; however, we will incorporate the rulings I am about to state into a separate, written document, and we will include a summary of the applicable law in that document.
>
> . . . .
>
> Now we'll move on to the Charlier matter. I recommend that Plaintiff's motion for summary judgment be denied and that the Commissioner's cross-motion for summary judgment be granted.
>
> Plaintiff Tracy A. Charlier is a woman in her fifties who previously worked as a District Sales Manager for Avon Beauty and as a real estate agent. In 2015, she fell at work and injured her neck and low back. She filed an application for benefits claiming that she has been disabled since September 30, 2016.
>
> The ALJ who ruled on Ms. Charlier's application for disability benefits found at step two that she had three severe impairments: degenerative disc disease of the cervical spine, neuropathy, and obesity. As part of his step two analysis, the ALJ also evaluated whether Charlier had any medically determinable

3

mental impairments.[2] The ALJ concluded that Charlier had a medically determinable mental impairment of depression, so he went on to rate the degree of her functional limitation resulting from her depression in accordance with the four criteria commonly referred to as the "Paragraph B" criteria.[3] He concluded that Charlier's depression "cause[d] no more than 'mild' limitation in any of the functional areas and the evidence d[id] not otherwise indicate that there is more than a minimal limitation in [her] ability to do basic work activities."[4] Accordingly, the ALJ concluded that her depression was not severe.[5]

At step three, the ALJ found that Charlier's impairments did not meet the standards for a listed impairment, so he went on to step four.

At step four, the ALJ found that Charlier had the residual functional capacity ("RFC") "to perform sedentary work [as defined in 20 C.F.R. § 404.1567(a)] except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she can occasionally push, pull, and reach overhead with the dominant upper right extremity; she can frequently handle and finger with the

---

[2] *See* 20 C.F.R. 404.1520a(b)(1).

[3] *Id.* at 404.1520a(b)(2), (c)(3) ("We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00E.

[4] (Transcript of Social Security Proceedings, D.I. 13 ("Record" or "R."), at 21.) Charlier asserts that "[t]he ALJ made no determination regarding her ability to adapt or manage." (D.I. 20 at 2; D.I. 28 at 3.) I disagree. I acknowledge that one portion of the ALJ's analysis appears to contain a typo. (R. 20 ("The claimant has the following degree of limitation in the four broad areas of mental functioning . . . [:] X limitation in adapting or managing oneself.").) However, the ALJ's opinion goes on to discuss evidence that Charlier "has appropriate mood and affect, [and] normal judgment and insight," and it sets forth an express finding (at step two) that Charlier's depression "causes no more than 'mild' limitation in *any* of the functional areas." (R. 20-21 (emphasis added).) In other words, the ALJ found that Charlier had no more than a mild limitation in her ability to adapt and manage herself. Moreover, Charlier has not specifically pointed this Court to evidence that she in fact had more than any mild difficulties in adapting and managing herself.

[5] *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

4

dominant right upper extremity; she can have occasional exposure to vibration and hazards, such as moving machinery and unprotected heights."[6] The ALJ found that, given that RFC, Charlier could not perform her past relevant work.[7]

At the last step, the ALJ found that, notwithstanding Charlier's limitations, a person with her background and prior work experience could work as a telemarketer. Accordingly, the ALJ found that Charlier was not disabled.[8]

Charlier challenges two aspects of the ALJ's decision. Her first argument is that the ALJ's step two finding that her depression was not severe is not supported by substantial evidence.[9] I disagree. The ALJ sufficiently articulated, with specific citations to the evidentiary record, why he found Charlier's impairments did not qualify as severe. Among other things, the ALJ considered Charlier's own statements about depression, but he found them inconsistent with other portions of the record indicating minimal treatment for depression and that medication improved her depression symptoms.[10]

The ALJ also noted that the mental status exams showed appropriate mood and affect, normal judgment and insight, and intact recent and remote memory.[11] The ALJ also considered the fact that Charlier noted worsening depression to her primary care provider in 2019 related to certain life events, but that she had failed to follow up as recommended.[12]

Charlier argues that the ALJ "fail[ed] to consider" evidence from Dr. Romirowsky and Dr. Simon, but the ALJ clearly did

---

[6] (R. 22.)

[7] (R. 26.)

[8] (R. 27.)

[9] (D.I. 20 at 12.)

[10] (R. 20 (citing 6F/49; 10F/2; 12F/5; 13F/3; 18F4-5).) For example, Dr. Romirowsky's notes indicate that Charlier "feels depressed" but that Cymbalta, which was prescribed for pain, seemed to be improving her depression. (R. 799-803.)

[11] (R. 20 (citing 1F/2-5, 20F).)

[12] (R. 20 (citing 18F).)

consider that evidence because the ALJ cited to their notes in his step two analysis.[13]

In short, there is no reason to think that the ALJ failed to consider evidence relevant to the question of whether Charlier's depression was "severe" within the meaning of the regulations. It is not the role of this Court to reweigh the evidence. The ALJ's finding that Charlier's depression was not severe is supported by substantial evidence. Accordingly, the Court should reject Charlier's argument that the ALJ erred at step two.

I now turn to Charlier's second challenge to the ALJ's decision. She argues that the ALJ erred at step four by failing to include limitations in the RFC related to her depression. I disagree.

As an initial matter, no one here disputes that the ALJ was required at step four to consider all of Charlier's impairments, even those that he found to be not severe.[14]

The ALJ did that. His lengthy step four analysis included a detailed discussion of Charlier's physical limitations as well as her claimed mental limitations. In particular, the ALJ carefully analyzed evidence relevant to the imposition of limitations stemming from her depression, including, for example, her ability to follow instructions, her ability to sustain work performance and attendance, her ability to understand, remember and apply information, her ability to interact with the public, and her ability to exercise appropriate judgment.[15] He also considered Charlier's testimony that "she is very forgetful with difficulty concentrating on tasks," but he nevertheless found that her own "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent" with the other evidence of

---

[13] (*See* R. 20 (citing 10F, 12F, and 13F).) Charlier also claims that the ALJ failed to consider evidence from Dr. Lifrak. But Dr. Lifrak's notes don't reflect anything about how Plaintiff's depression affected her ability to work. (*See* R. 773-777 (noting that plaintiff had reported emotional depression).)

[14] S*ee Rutherford v. Barnhart*, 399 F.3d 546, 554 n.7 (3d Cir. 2005) ("Although the impairment must be medically determinable, it need not be a 'severe' impairment to be considered in the RFC assessment."); *see also* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether such impairment, if considered separately, would be of sufficient severity.").

[15] (R. 22-23, 25-26.)

6

record.[16] Thus, while the ALJ did not ultimately include limitations specifically related to Charlier's depression in the RFC, there is no question that the ALJ considered evidence related to Charlier's depression in the RFC assessment.

Charlier's real argument is that, once the ALJ found at step two that Charlier had "mild" limitations with respect to the Paragraph B criteria, the ALJ was required to include those same limitations in the RFC.[17]

I reject that argument. For one thing, "unlike the findings at step[] two . . . , the RFC 'must be expressed in terms of work-related functions[,]' such as by describing the claimant's 'abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'"[18] In other words, "the findings at step[] two . . . will not necessarily translate to the language used at steps four and five."[19]

I also reject the proposition that the ALJ was required to include limitations in the RFC related to Charlier's mental functioning simply because the ALJ found at step two that she had "mild" limitations with respect to the four broad mental domains described in the Paragraph B criteria. To be sure, there are decisions from some district courts (including some district courts in this Circuit) that appear to suggest the opposite: that is, if the ALJ finds a non-severe, mild mental limitation at step two, then the ALJ is required to include in the RFC at step four a limitation directed to mental functioning.[20]

---

[16] (R. 22-23.)

[17] (*See* D.I. 28 at 5 ("The ALJ specifically determined that Charlier had 'mild' limitations related to her depression. He was required to include them in his RFC finding or his determination is flawed.").)

[18] *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (citing SSR 96-8p, 61 Fed. Reg. 34474, 34476 (July 2, 1996)).

[19] *Id.*

[20] *See, e.g.*, *Snider v. Saul*, No. 19-1907-MN-SRF, 2021 WL 3090870, at *9 (D. Del. July 22, 2021) (remanding where the ALJ found "mild" limitations in the four Paragraph B categories at step two but failed to include mental limitations in the RFC), *report and recommendation*

But the Third Circuit has never imposed such a categorical rule. And, while it is true that the ALJ is required to consider all of the claimant's limitations when formulating the RFC, Charlier has pointed to nothing in the regulations that would require a limitation to be included in the RFC if the ALJ found at step four that the limitation would not affect a claimant's ability to work. As one court put it, "[t]here is nothing inherently illogical about acknowledging a claimant's mild and non-disabling limitations from the [step two] viewpoint, but then concluding that these limitations do not restrict what a claimant can do at work."[21] Many other courts have concluded the same.[22]

While it is possible that an ALJ's failure to consider a claimant's non-severe mental impairment at step four may constitute reversible error where the ALJ completely fails to consider limitations stemming from that non-severe impairment, that is not the case here. It is clear that the ALJ considered evidence of Charlier's impairment of depression at step four, and he said enough to demonstrate that he complied with his duty to consider whether Charlier's non-severe depression resulted in any additional limitations that should have been accounted for in the RFC.

---

*adopted sub nom. Snider v. Kijakazi*, 2021 WL 3475676 (Aug. 6, 2021); *Meersand v. Kijakazi*, No. 20-1084, 2021 WL 5003331, *3 (E.D. Pa. Oct. 28, 2021) (same).

[21] *Karen Marie M. v. Kijakazi*, No. 20-416, 2021 WL 6010422, at *4 (D. Idaho Nov. 19, 2021), *report and recommendation adopted*, 2021 WL 5999132 (D. Idaho Dec. 20, 2021).

[22] *See, e.g.*, *Karen Marie M.*, 2021 WL 6010422, at *6 (rejecting claimant's argument that a step two finding of "mild" mental limitations compels the inclusion of mental limitations in the RFC, noting that "the majority of district courts to face the question . . . have found that mild mental limitations are not presumptively indicative of restrictions in a claimant's work abilities" (citing cases)); *Fackler v. Saul*, No. 20-790, 2021 WL 3493511, at *8 (N.D. Ohio July 16, 2021) (explaining that courts in the Sixth Circuit have "routinely rejected" the argument that a finding of mild mental limitations at step two must be included in the RFC as a matter of law), *report and recommendation adopted*, 2021 WL 3492129 (Aug. 9, 2021); *Hansford v. Saul*, No. 18-607, 2019 WL 4727771, at *2–3 (W.D. Wis. Sept. 27, 2019) ("The regulations and case law say that the ALJ must *consider* the limitations posed by the claimant's severe and non-severe impairments. They do not say that the ALJ must always *include* non-severe limitations in the RFC." (emphasis in original)); *Keys v. Colvin*, No. 14-250, 2016 WL 447519, at *8 (N.D. Ind. Feb. 5, 2016), *aff'd sub nom. Keys v. Berryhill*, 679 F. App'x 477 (7th Cir. 2017); *cf. Hyer v. Colvin*, No. 15-297-GMS, 2016 WL 5719683, at *13 (D. Del. Sept. 29, 2016) ("The court finds that there is some danger in reflexively conflating the Paragraph B findings at step three with the RFC determination at step four.").

### III.     CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's motion for summary judgment (D.I. 19) be DENIED and the Commissioner's cross-motion (D.I. 24) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: February 28, 2022

_____
The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE