IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRACY A. CHARLIER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 20-1327-CFC |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this First day of June in 2022, having reviewed the Report and Recommendation issued by the Magistrate Judge on February 28, 2022 (D.I. 32) and the objections filed thereto by Plaintiff (D.I. 33) and Defendant's response (D.I. 34), IT IS HEREBY ORDERED that, pursuant to 28 U.S.C. § 636(b)(1), the Report and Recommendation is ADOPTED and Charlier's objections are OVERRULED for these reasons:

    1.    A district court judge is charged with conducting de novo review of a magistrate judge's report and recommendation when specific written objections are

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021; prior to Kijakazi, Andrew Saul served as Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), Kijakazi was automatically substituted as the Defendant in this action.

made. 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). The judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

2. Plaintiff Tracy Charlier filed claims for disability insurance benefits with the Social Security Administration (SSA) in 2017. D.I. 20 at 2. SSA Administrative law judge Jack Penca (the ALJ) denied her claims on August 1, 2019, and the SSA Appeals Council declined additional review on July 27, 2020. D.I. 13 at 1, 14, 16. That denial made the ALJ's decision final. Charlier then sought relief from the Appeals Council's decision by filing an action in this Court on October 1, 2020. D.I. 2. I referred the case to Magistrate Judge Jennifer Hall on October 30, 2020. D.I. 5. In 2021, Charlier and the Commissioner filed cross-motions for summary judgment. D.I. 19; D.I. 24. On February 11, 2022, the magistrate judge announced her report and recommendation to deny Charlier's motion and to grant the Commissioner's motion. D.I. 32 at 3. And the magistrate judge memorialized her report and recommendation in writing on February 28, 2022. D.I. 32. It is this written report and recommendation that I now review de novo.

3. Charlier seeks in her motion for summary judgment the entry of a judgment order reversing the Commissioner's decision to deny her benefits and remanding for further administrative proceedings. D.I. 19; D.I. 20 at 1. The

2

Commissioner seeks by her summary judgment motion the entry of a judgment order affirming the ALJ's decision. D.I. 24.

4. Charlier files two objections to the magistrate judge's report and recommendation: First, she argues that "[s]ubstantial evidence does not support the findings of the ALJ regarding the severity of [her] depression." And, second, she contends that "the ALJ erred in failing to consider [her] credibly established mental health limitations in his [residual functional capacity (RFC)] findings and provided no sufficient explanation for the failure to include." D.I. 33 at 1.

5. I review the ALJ's factual findings for substantial evidence. Substantial evidence need only be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). When reviewing a social security disability appeal, ALJs engage in a five-step analysis, and two of those steps are relevant here: At step two, the ALJ determines whether the claimant has severe physical or mental impairments and "determines 'the degree of functional limitation resulting from the impairment(s)[.]'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202–02 (3d Cir. 2019) (quoting 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2)) (alterations in original). At step four, "the ALJ assesses the claimant's residual functional capacity (RFC) and whether he can

perform his past relevant work." *Id.* (quoting 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv)) (internal quotations omitted).

6. In support of her first objection, Charlier argues that "the ALJ did not consider substantial parts of the eviden[tial] record that supported [Charlier's mental health] limitations [at step two,] including the records of Dr. Romirowsky and other treating physicians[,]" such as Drs. Kennedy and Kim; she also argues that the magistrate judge "did not address the ALJ's failure to consider the combination of Ms. Charlier's pain and depression." D.I. 33 at 2.

7. These contentions are either incorrect or insufficient to support a finding that the ALJ lacked substantial evidence for his finding that Charlier's depression was not severe at step two. The ALJ cited to Dr. Romirowsky's notes. D.I. 13 at 20 (citing 13F, or Dr. Romirowsky's notes). Further, neither Dr. Kennedy, D.I. 13 at 291–302, nor Dr. Kim, D.I. 13 at 670–673, treated Charlier for depression, so the failure to consider their testimony under the category of mental health, D.I. 13 at 20, does not constitute a lack of substantial evidence. Finally, the ALJ did, albeit briefly, consider the combination of Charlier's pain and depression. D.I. 13 at 20 (noting that "in the past, [Charlier] reported improvement of depression symptoms with Cymbalta that had been prescribed for pain" and citing as support, *inter alia*, the notes of Dr. Romirowsky). Charlier argues only that the ALJ lacked substantial evidence for his finding of non-severe depression. D.I. 33

4

at 1–2; D.I. 20 at 14–15. Even if the ALJ gave limited consideration to the combination of Charlier's pain and depression, the ALJ's well-reasoned opinion and its numerous citations to Charlier's record, D.I. 13 at 20–21 (including 12 citations in the paragraph on mental health) provide adequate evidence to support the ALJ's reasonable conclusion that Charlier's depression was "nonsevere." For these reasons, I will overrule Charlier's first objection.

8. In support of her second objection, Charlier argues that (1) the ALJ "failed to consider all credibly established [mental health] limitations" in the ALJ's analysis of Charlier's residual functional capacity (RFC); (2) the ALJ provided an insufficient explanation of his failure to include such limitations in her RFC; and (3) the ALJ, as a matter of law, was required to include the omitted mental health functional limitations in her RFC. D.I. 33 at 3–6.

9. At step two, the ALJ found that Charlier had mild limitations in "understanding, remembering, or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace . . . ." D.I. 13 at 20. In the analysis supporting Charlier's RFC, the ALJ explained that Charlier "stated . . . that she is very forgetful with difficulty concentrating on tasks[,]" but the ALJ found that, "[w]ith respect to [Charlier's] allegations regarding memory and concentration, treating source records indicate normal findings on mental status exam." D.I. 13 at 22–23 (citations omitted). The ALJ also considered and

5

discounted the administrative findings of "[s]tate agency psychological consultants" "because they are not supported by explanation," and he found unpersuasive the opinion of Charlier's consultant psychologist, Dr. Brian Simon, because "[the opinion] is inconsistent with the record as a whole that indicates [Charlier's] depression i[s] nonsevere considering her lack of mental health treatment and the longitudinal record that shows normal mental status exams." D.I. 13 at 25 (citations omitted). The ALJ cited to several exams in the record related to Charlier's mental health. D.I. 13 at 25. Two of the exams found "mood and effect are appropriate" and "[j]udgment and insight are normal." D.I. 13 at 292, 911. A third exam and a psychological evaluation from Dr. Simon found that Charlier did not have problems with "being able to get along well with others," with "exercising judgment, insight, and common sense at work," or with "maintaining concentration . . . ." D.I. 13 at 782, 797.

10. First, I agree with Charlier that the ALJ had to consider her mental health limitations. *See* 20 C.F.R. § 404.1520(e). But, as I noted above, *supra* ¶ 9, the ALJ did review the record evidence of Charlier's mental health diagnoses and treatment. The ALJ's failure to restate the mental health limitations from step two by name in step four does not, alone, establish that the ALJ failed to consider those limitations. D.I. 13 at 20, 25. As Judge Hall explained, "[the ALJ] said enough to demonstrate that he complied with his duty to consider whether Charlier's non-

severe depression resulted in any additional limitations that should have been accounted for in the RFC." D.I. 32 at 8. An ALJ need not "'chant every magic word correctly'" in an "otherwise thorough and well-reasoned opinion . . . ." *Hess*, 931 F.3d at 200 (quoting *United States v. Hickman*, 991 F.2d 1110, 1115 (3d Cir. 1993) (Roth, J., concurring in part and dissenting in part)).

11. Second, the ALJ gave a sufficient explanation for his omission of Charlier's "mild" mental health limitations from the RFC. In *Hess*, the Third Circuit indicated in dicta that an ALJ could omit a claimant's limitations from the RFC if the ALJ provided a "valid explanation." *See id.* at 211 (quoting *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004)) (emphasis omitted). Whether an explanation is "valid" is "fact-specific." *Id.* at 212. But *Hess* held that an RFC could limit a claimant with "'moderate' difficulties in 'concentration, persistence, or pace'" to "simple tasks"—without discussion of the moderate limitation—based on an analysis, within and beyond step four, of opinion evidence, claimant-reported activities of daily living, and mental status examinations. *Id.* at 213–14. Here, in the RFC, the ALJ considered Charlier's self-reported symptoms, the examinations of Dr. Simon and the state psychologist, and notes from Charlier's medical providers. *See supra* ¶ 9; D.I. 13 at 22–23, 25–26. And, in step two, the ALJ considered Charlier's lack of "psychiatric treatment[,]" testimony about her depression, and "mental status exams by her treating sources . . . ." D.I. 13 at 20.

Further, Charlier's limitations are mild, as opposed to the moderate limitation in *Hess*. Since Charlier's ALJ reviewed similar evidence to that cited in *Hess*, I find that the ALJ had a "valid explanation" for his omission of Charlier's mental health limitations from the RFC.

12. Third, I disagree with Charlier that the ALJ was required, as a matter of law, to include every limitation from step two in Charlier's RFC. Charlier argues that *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), imposes a requirement on ALJs to include all recognized limitations in the RFC. D.I. 33 at 3–4. *Rutherford* found that a hypothetical question that an ALJ poses to a vocational expert—and, by extension, the RFC that supported the hypothetical question—must include "all of a claimant's credibly established limitations." 399 F.3d at 554 (citations and emphasis omitted). But, in *Rutherford*, the ALJ considered and "reasonably discounted" a "severe [or extreme] drowsiness" limitation, among others, because "no actual complaint of drowsiness appears in the medical record" and severe drowsiness was "inconsistent with Rutherford's testimony that she cared for her child and grandchild." *Id.* at 555. Similarly, here, the ALJ considered Charlier's testimony that "she is very forgetful with difficulty concentrating on tasks" and found that, "[w]ith respect to her allegations regarding memory and concentration, treating source records indicate normal findings on mental status exam." D.I. 13 at 22–23 (citation omitted). And the ALJ

demonstrated in his analysis of Dr. Simon's expert opinion that the ALJ had thoroughly reviewed the medical record. *See* D.I. 13 at 25 (citing to the record). Thus, the ALJ complied with *Rutherford*'s requirements.

13. Further, I agree with Judge Hall that Charlier points to no regulation that requires the ALJ to include every limitation found at step two in the RFC. D.I. 32 at 8. Charlier cites *Donato v. Berryhill*, 2019 WL 3290988 (D. Del. July 22, 2019), *report and recommendation adopted sub nom. Donato v. Saul*, 2019 WL 4256690 (D. Del. Sept. 9, 2019), as "precisely similar to this case." D.I. 33 at 4. *Donato* found that the ALJ "had a duty to address [a] mild limitation [found in step two] in the hypothetical question posed to the [vocational expert][,]" 2019 WL 3290988, at *15; *Donato* relied primarily on *Moore v. Colvin*, 239 F. Supp. 3d 845, 860 (D. Del. 2017), and not on statutory or regulatory requirements. *Moore*, for its part, rested its holdings on other district court cases and found that the ALJ "had a duty to address" "mild limitations associated" with an applicant's "non-severe depression" "in the RFC assessment . . . ." 239 F. Supp. 3d at 860–61 (citations omitted). Here, the ALJ "addressed," but did not include in the RFC, the limitations that arose from Charlier's non-severe depression. *See supra* ¶ 9. To the extent that *Moore* requires a more "detail[ed]" analysis of how mental limitations found in step two affect a claimant's "ability to work," 239 F. Supp. 3d at 861, I find the ALJ's analysis was sufficient here, *see supra* ¶ 11. To the extent

9

*Moore* requires that the RFC include every limitation found in step two, I disagree and, instead, expect some variance between step two limitations and what is included in the RFC because, "unlike the findings at step[] two . . . , the RFC must be expressed in terms of work-related functions . . . ." *Hess*, 931 F.3d at 209 (cleaned up).

14. Charlier cites two other Third Circuit decisions, but both are distinguishable. First, the ALJ's careful review of the evidence Charlier submitted over four single-spaced pages (in step four, alone) contrasts with *Cotter*, where an ALJ put in the record only a "somewhat abbreviated discussion of the evidence relating to the heart condition" and made "no mention of any medical findings or opinions supporting [plaintiff]'s claim." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Second, in *Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001), the Third Circuit critiqued the ALJ's failure to make "mention" of many "significant contradictory findings"; here, however, the ALJ considered Dr. Simon's treatment records and explained why he found Dr. Simon's contrary opinion inconsistent with other portions of the record, D.I. 13 at 25.

15. In summary, I find that the ALJ considered Charlier's mental health limitations from step two in his RFC analysis; that the ALJ provided a "valid explanation" for why he did not include those limitations in the RFC; and that the

ALJ was not required to include the omitted mental health functional limitations in Charlier's RFC. For those reasons, I will overrule Charlier's objections.

16. In conclusion, I overrule Charlier's objections that "[s]ubstantial evidence does not support the findings of the ALJ regarding the severity of Ms. Charlier's depression" and that "the ALJ erred in failing to consider Ms. Charlier's credibly established mental health limitations in his RFC findings and provided no sufficient explanation for the failure to include." D.I. 33 at 1. Since I overrule both of Charlier's objections, I will adopt in full Judge Hall's report and recommendation.

WHEREFORE, IT IS HEREBY ORDERED that:

1. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (D.I. 33) are DENIED;

2. The Report and Recommendation (D.I. 32) is ADOPTED;

3. Plaintiff's Motion for Summary Judgment (D.I. 19) is DENIED;

4. Defendant's Motion for Summary Judgment (D.I. 24) is GRANTED; and

5. The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff and to close the case.

IT IS SO ORDERED.

_____
COLM F. CONNOLLY
CHIEF JUDGE